UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VICTOR KEEYLEN, ) | |
|  ) | |
| Plaintiff, ) | |
|  ) | |
| v. ) | No. 1:20-cv-00756-JRS-DML |
|  ) | |
| WEXFORD OF INDIANA, LLC, ) | |
| PIERCE, ) | |
| WILSON, ) | |
|  ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Victor Keeylen filed this civil action after he fell in the shower at Pendleton Correctional Facility and hit his head against the wall. He asserts that the defendants, Wexford of Indiana, LLC, Dr. Duan Pierce, and Nurse Practitioner Sheri Wilson, are responsible for denying him adequate medical care to treat his injuries. The defendants seek summary judgment on the basis that Mr. Keeylen failed to provide any evidence in support of his claims. Mr. Keeylen did not respond. For the reasons explained below, the defendants' unopposed motion for summary judgment, dkt [54], is **granted**.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

In this case, the defendants have met that burden through their unopposed motion for summary judgment. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."). Because the plaintiff failed to respond to the summary judgment motion, the facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1; *Smith*,, 321 F.3d at683 ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). *See also* dkt. 57 at 1 (warning plaintiff that the failure to file a response in opposition would result in the motion for summary judgment being considered unopposed). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Undisputed Facts

At all times relevant to the complaint in this matter, Mr. Keeylen was an Indiana prisoner housed at the Pendleton Correctional Facility ("Pendleton").

Ms. Wilson first saw Mr. Keeylen for his complaints related to his fall in the shower on February 13, 2020. Dkt. 56-3 at 1-3. At this visit, Mr. Keeylen stated that he had slipped and fallen in the shower on February 5, 2020 and was experiencing headaches. Mr. Keeylen was not experiencing any neck pain and did not have a fever. Ms. Wilson educated Mr. Keeylen on the causes of headaches and instructed him to get Tylenol or ibuprofen from commissary, but not to take it daily. Ms. Wilson instructed Mr. Keeylen to seek reevaluation if he began experiencing severe neck pain, high fever, numbness, or tingling. Dkt. 56-1 at ¶ 5.

On February 28, 2020, Ms. Wilson submitted an x-ray requisition for Mr. Keeylen's hip and spine. *Id.* at ¶ 6; dkt. 56-3 at 4.

Dr. Pierce saw Mr. Keeylen once for his complaints related to his fall in the shower, on March 3, 2020. Dkt. 56-2 at ¶ 5; dkt. 56-3 at 16-17. At this visit, Mr. Keeylen was complaining of headaches, hip pain, and right-hand pain. Mr. Keeylen reported to Dr. Pierce that he did not lose consciousness as a result of the fall. Dr. Pierce's physical examination of Mr. Keeylen's head revealed no evidence of a skull fracture. Dr. Pierce noted that there was no visible contusion to the back of Mr. Keeylen's head, Mr. Keeylen had a normal gait and normal range of motion of the neck and had not suffered any memory impairment. Thus, an x-ray of Mr. Keeylen's skull was not indicated. Dr. Pierce's physical examination of Mr. Keeylen's right hand revealed normal range of motion and strength, normal sensation, and no visible swelling, so an x-ray of his right hand was not indicated at this time. Mr. Keeylen was given Tylenol and a pan in which to soak his hand. Mr. Keeylen was encouraged to continue walking and to perform range of motion exercises. *Id.*

On June 12, 2020, Ms. Wilson saw Mr. Keeylen again. Dkt. 56-1 at ¶ 7. At this visit, Mr. Keeylen indicated he was still having pain, but that it had improved. Mr. Keeylen reported that he felt his right hand had not healed properly, as it was not symmetrical to his left hand. At

this time, Mr. Keeylen was able to perform all of his activities of daily living with no limitations, and Ms. Wilson noted that Mr. Keeylen's range of motion and strength in his right hand appeared normal. Ms. Wilson instructed Mr. Keeylen to use ice and heat on the affected areas as needed, and perform gentle range of motion exercises, prescribed Tylenol and naproxen, and instructed Mr. Keeylen to obtain other over-the-counter pain medication from the commissary if necessary. Ms. Wilson submitted another x-ray requisition for Mr. Keeylen's right hand and hip, based on his continued complaints of pain. *Id.*

The x-ray of Mr. Keeylen's right hand revealed a remote fracture of the distal second metacarpal. The x-ray of Mr. Keeylen's right hip was normal. *Id.* at ¶ 8.

On June 23, 2020, Dr. Knieser reviewed Mr. Keeylen's x-rays and determined that no action was required. *Id.* at ¶ 9.

On July 9, 2020, Ms. Wilson submitted another x-ray requisition for Mr. Keeylen's right hand, to determine whether the fracture was new or old. *Id.* at ¶ 10. The x-ray of Mr. Keeylen's right hand revealed the stable appearance of a healed second metacarpal fracture. *Id.* at ¶ 11.

Mr. Keeylen's testified in his deposition that he is suing Wexford because "Wexford is responsible for hiring the staff and knowing that they would provide inadequate treatment." Dkt. 56-4 at 21:12–14.

### III. Discussion

This action is brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Keeylen's allegations implicate his Eighth Amendment rights.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "'To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition.'" *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021) (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

As to the first element, a "medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

"The second element of deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Donald v. Wexford Health Sources, Inc*., 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations and citations omitted). A defendant must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). *See also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner."). Therefore, to survive summary judgment, Mr. Keeylen must have evidence of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs as to each of the individual medical providers. For the reasons explained below, Mr. Keeylen has not met his burden.

### A. Dr. Pierce

The undisputed evidence shows that Dr. Pierce was not deliberately indifferent to Mr. Keeylen's serious medical needs. Dr. Pierce only had one encounter with Mr. Keeylen and treated him appropriately. Dr. Pierce's physical examination of Mr. Keeylen revealed no indication of a skull or hand fracture. Based on his condition and symptoms, Mr. Keeylen was given Tylenol and a pan in which to soak his hand. Mr. Keeylen was encouraged to continue walking and to perform range of motion exercises. There is no evidence that suggests that this was not an appropriate course of treatment based on Mr. Keeylen's physical presentation and reported symptoms. Accordingly, Dr. Pierce was not deliberately indifferent to Mr. Keeylen's serious medical needs, and he is entitled to judgment as a matter of law.

### B. Ms. Wilson

Similarly, there is no evidence that Ms. Wilson was deliberately indifferent to Mr. Keeylen's serious medical needs. The undisputed material facts show that Ms. Wilson evaluated Mr. Keeylen on several occasions. During their first encounter, Mr. Keeylen complained only of headaches. Ms. Wilson educated Mr. Keeylen on the causes of headaches, and the best remedies, which are lots of fluid and rest. Mr. Keeylen was instructed that he could obtain pain medications from the commissary to treat his headaches, if necessary, but that medications should not be taken daily.

During their subsequent encounters, Mr. Keeylen continued to complain of pain, but noted

that it was improving. Based on his continued complaints of pain, Ms. Wilson prescribed Tylenol and naproxen, and ordered multiple x-rays of the areas complained of, the last of which showed the stable appearance of a healed fracture.

There is no evidence that suggests that any of this was not an appropriate course of treatment based on Mr. Keeylen's physical presentation and reported symptoms. Accordingly, Ms. Wilson was not deliberately indifferent to Mr. Keeylen's serious medical needs, and she is entitled to judgment as a matter of law.

### C. Wexford of Indiana, LLC

Mr. Keeylen sued Wexford of Indiana, LLC, because it hired the defendant medical care providers. Wexford argues that it is entitled to summary judgment, because Mr. Keeylen has no evidence of any policies, practices, or procedures of Wexford that led to a violation of his constitutional rights. Instead, the attached medical records and undisputed material facts show that Mr. Keeylen received timely and thorough medical treatment.

Wexford acts under color of state law by providing medical care to state prisoners, so it is treated as a government entity for purposes of Section 1983 claims. *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019). Thus, Wexford "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by [its] employees. [It] can, however, be held liable for unconstitutional … policies or customs." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005-06 (7th Cir. 2017) (citing *Monell v. Dep't of Soc.l Servs.*, 436 U.S. 658, 690-91 (1978)). To prevail on his claim against Wexford based on an unconstitutional policy or custom, Mr. Keeylen must show that "he was deprived of a federal right" and "trace the deprivation" to a Wexford policy or custom. *Dean v. Wexford Health Sources, Inc.*, -- F.4th --, 2021 WL 5230855 at *13 (7th Cir. Nov. 10, 2021).

7

Mr. Keeylen has not presented any evidence that his constitutional rights were violated, nor can any deprivation of a federal right be traced to a Wexford policy or custom. As such, Wexford of Indiana, LLC, is entitled to judgment as a matter of law.

### IV. Conclusion

The defendants' unopposed motion for summary judgment, dkt [54], is **granted.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 11/17/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

VICTOR KEEYLEN
950970
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Ms.rticiMs.nt – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Sarah Jean Shores-Scisney
KATZ KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com